**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

JOSHUA PRIDGEN,

                              Plaintiff,

        v.                                                    No. 9:16-CV-535
                                                              (DNH/CFH)

OFFICER BEATIE,

                              Defendant.

_____

**APPEARANCES:**                          **OF COUNSEL:**

JOSHUA PRIDGEN
13-R-2638
Auburn Correctional Facility
P.O. Box 618
Auburn, New York 13021
Plaintiff pro se

HON. ERIC T. SCHNEIDERMAN          MICHAEL G. McCARTIN, ESQ.
Attorney General for the           Assistant Attorney General
State of New York
The Capitol
Albany, New York 12224-0341
Attorney for Defendant

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

    Plaintiff pro se Joshua Pridgen ("Pridgen"), an inmate who was, at all relevant times, in

the custody of the New York Department of Corrections and Community Supervision

("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983.  Pridgen alleges that

Defendant Officer Beatie ("Defendant") violated his constitutional rights under the Eighth

---

    [1]    This matter was referred to the undersigned for Report-Recommendation and Order
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

Amendment.  Dkt. No. 1 ("Compl.").  An additional defendant was named, but the claims

against him have since been dismissed.  Dkt. No. 3 at 11-13.[2]  Presently before the Court is

Defendant's motion for summary judgment.  Dkt. No. 25.  Pridgen opposed the motion, and

Defendant submitted a reply.  Dkt. Nos. 39, 40.  For the following reasons, it is

recommended that Defendant's motion for summary judgment be granted.


## I.  Background

### A.  Facts[3]

---

[2]     Throughout this Report-Recommendation, references to page numbers in items that appear on the docket refer to the pagination of the header numbers generated by the Court's electronic filing system, CM/ECF, not to the page numbers the parties assign in the individual documents.

[3]     Local Rule 7.1(a)(3) states:

Summary Judgment Motions

Any motion for summary judgment shall contain a Statement of Material Facts.  The Statement of Material Facts shall set forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue. Each fact listed shall set forth a specific citation to the record where the fact is established. The record for purposes of the Statement of Material Facts includes the pleadings, depositions, answers to interrogatories, admissions and affidavits.

The opposing party shall file a response to the Statement of Material Facts. The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises. The non-movant's response may also set forth any additional material facts that the non-movant contends are in dispute. *Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.*

N.D.N.Y. Local Rule 7. 1(a)(3) (emphasis in original).

Defendant filed a Statement of Material Facts.  Pridgen responded and admits the facts contained in certain paragraphs of Defendant's Statement of Material Facts.  Additionally, the parties annexed exhibits to their submissions, without objection related to the authenticity of any documents.  Therefore, to the extent that the "facts" asserted by the parties are supported by the record, the undersigned will consider the facts and relevant exhibits/documents in the context of the within motion.  See U.S. v. Painting known as Hannibal, No. 07-CV-1511, 2010 WL 2102484, at *1, n.2 (S.D.N.Y.  May 18, 2010) (citing Daniel v. UnumProvident Corp., 261 F. App'x 316, 319 (2d Cir.  2008) (summary order) ("[A] party is not required to authenticate documents on a summary judgment motion where, as here, authenticity is not challenged by the other party)).  In light of the procedural posture of the case, the following recitation is derived from the record now before the court, with all inferences drawn and ambiguities resolved in non-moving party's favor.  Terry v. Ashcroft, 336

2

The facts are reviewed in the light most favorable to Pridgen as the non-moving party.[4]
See subsection II (A) infra.  At the time of the incident described in the Complaint, Pridgen
was confined at Watertown Correctional Facility ("Watertown C.F.").  See Compl.  On June
15, 2014, Pridgen and Defendant were involved in a use of force incident.  Compl. at ¶ 15.
Pridgen claims that at approximately 11:00 P.M., Defendant blocked Pridgen's path as he
attempted to exit the living quarters of his dorm and walk downstairs to wash his dishes.
Dkt. No. 25-3 at 7.  Pridgen alleges that Defendant told him that talking was not permitted
after 11:00 P.M., and "smacked the dishes out of [his] hands."  Id. at 7-8.  Pridgen asserts
that he complied with Defendant's directive to return to his bunk.  Id. at 8.

After five minutes, Pridgen went downstairs and asked another officer for a grievance
form.  Dkt. No. 25-3 at 8.  Defendant overheard this conversation, approached Pridgen, and
told him that he would "shove the grievance . . . up [his] behind."  Id.  Pridgen maintains that
he was attempting to walk away when Defendant punched him in the left eye.  Id.  Pridgen
testified that he stumbled, and when Defendant attempted to grab him, they both fell
backward.  Id.  Pridgen rose to his feet and complied with Defendant's order to place his
hands on the wall for a frisk.  Dkt. No. 25-3 at 8.  Pridgen claims that Defendant then
"slammed [him] down the stairs to the ground" and continued to "punch [him] in the same

---

F.3d 128, 137 (2d Cir. 2003).

[4] The record herein contains few undisputed facts.  Pridgen and Defendant disagree on many
of the events that transpired and provide conflicting accounts of the circumstances surrounding the incidents.
Defendant argues that Pridgen's account of the events, presented in his memorandum of law, should not be
credited because it is contradicts his deposition testimony.  See Dkt. No. 40.  To the extent that Pridgen's
deposition testimony is at odds with his submissions, the Court will follow the rule that "a party may not create
an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or
addition, contradicts the affiant's previous deposition testimony."  Raskin v. Wyatt Co., 125 F.3d 55, 63 (2d
Cir. 1997).  The facts recited are for the relevant time period as referenced in the Complaint.

left eye" while unidentified officers held him down.  Id. at 9.

After the incident, Pridgen was escorted to the Special Housing Unit ("SHU").  Dkt. No. 25-3 at 9-10.  Officers warned Pridgen against reporting the incident.  Id.  Pridgen asked for a "grievance paper" and claims that he heard the officers "ripping up" his grievance.  Id. at 10.  Pridgen received a misbehavior report charging him with assaulting staff, violent conduct, violating a direct order, interfering with an employee, creating a disturbance, and violating frisk-procedures.  Dkt. No. 25-3 at 17-18.  During his Tier III disciplinary hearing related to the ticket, Pridgen pleaded guilty to all charges.  Id.  Pridgen was confined in the Special Housing Unit at Watertown C.F. for eleven days after the incident.  Dkt. No. 25-3 at 43.  He did not file a grievance at Watertown.  Pridgen was transferred to Upstate Correctional Facility ("Upstate C.F."), where he remained for eighteen months.  Id.  While Pridgen was at Upstate C.F., other inmates told him that he should not file a grievance because he would suffer retaliation from other officers.  Id. at 43-46.  Thus, Pridgen also did not file a grievance related to the incident while at Upstate.  Dkt. No. 25-3 at 41.

On November 5, 2014, Pridgen pleaded guilty to Assault in the Second Degree in violation of N.Y. Penal Law § 120.05(07).[5]  Dkt. No. 25-3 at 20-25; Dkt. No. 25-6; Dkt. No. 25-7.  During Pridgen's plea allocution, he admitted that he assaulted and caused physical injury to a corrections officer.  Dkt. No. 25-8 at 7.  On December 24, 2014, Pridgen was sentenced to five years confinement.  Dkt. No. 25-3 at 20; Dkt. No. 25-7.  Pridgen did not appeal the sentence.  Dkt. No. 39-1 at 9.  In his Complaint, Pridgen alleges that Defendant

---

[5]     The elements of second degree assault under N.Y. Penal Law § 120.05(7) are: (1) while confined in a correctional facility, (2) after having been charged with or convicted of a crime, (3) an individual causes physical injury to another person, (4) with intent to cause such injury.  See N.Y. Penal Law § 120.05(7).

attacked him "without provocation."  Compl. at ¶ 5(a).

Defendant disputes Pridgen's account and claims that heard Pridgen speaking loudly with an officer downstairs and descended the stairway to investigate.  Dkt. No. 39-2 at 2. As Defendant approached the bottom step, Pridgen "came at [him]" and struck him in the chest causing Defendant to fall down the stairs.  Id.  Defendant asserts that Pridgen did not comply with frisk procedures or respond to instructions.  Id.  As a result, Pridgen and Defendant were involved in a physical struggle.  Id.

## B.  Procedural History

On May 5, 2016, the Court received the Complaint in the within action.  Dkt. No. 1. Upon review of the Complaint, the Court directed Defendant to respond to the Eighth Amendment claim.  Dkt. No. 3.  On January 19, 2017, Defendant filed an Answer.  Dkt. No. 18.  On May 26, 2017, Pridgen appeared at a deposition.  Dkt. No. 25-3.  On August 3, 2017, Defendant filed this motion pursuant to Fed. R. Civ. P. 56, seeking judgment as a matter of law with respect to Pridgen's' Eighth Amendment claim.  Dkt. No. 25.  Pridgen opposed the motion, and Defendant filed a reply.  Dkt. Nos. 39, 40.

## II.  Motion for Summary Judgment[6]

Pridgen contends that Defendant used excessive force during the June 15, 2014 incident in violation of the Eighth Amendment.  See Comp., generally.  Defendant argues that Pridgen's Eighth Amendment is barred by Heck v. Humphrey, 512 U.S. 477 (1994), or,

---

[6]    All unpublished decisions cited herein, unless otherwise indicated, are attached to this Report-Recommendation.

in the alternative, that Pridgen failed to exhaust his administrative remedies.  See Dkt. No. 25, generally.

### A. Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact, it was supported by affidavits or other suitable evidence, and the moving party is entitled to judgment as a matter of law.  The moving party bears the burden of demonstrating the absence of disputed material facts by providing the court with portions of pleadings, depositions, and affidavits which support the motion.  FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Facts are material if they may affect the outcome of the case as determined by substantive law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 317, 248 (1986).  All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party.  Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).  The party opposing the motion must set forth facts showing a genuine issue for trial. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  For a court to grant a motion for summary judgment, it must be apparent that no rational finder of fact could find in favor of the non-moving party.  Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude.  See Triestman v. Federal Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006).  As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," . . . that a pro se litigant's submissions must be construed "liberally,". . . and that such

> submissions must be read to raise the strongest arguments that
> they "suggest," . . . .  At the same time, our cases have also
> indicated that we cannot read into pro se submissions claims that
> are not "consistent" with the pro se litigant's allegations, . . . or
> arguments that the submissions themselves do not "suggest," .
> . . that we should not "excuse frivolous or vexatious filings by pro
> se litigants," . . . and that pro se status "does not exempt a party
> from compliance with relevant rules of procedural and
> substantive law.

Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d

185, 191-92 (2d Cir. 2008).


### B.  Heck v. Humphrey

Defendant argues that Pridgen's excessive force claim is barred by the Heck doctrine

because the allegations in the Complaint are "directly inconsistent" with Pridgen's guilty

plea to Assault in the Second Degree.  Dkt. No. 25-10 at 4-10.  In reply, Pridgen argues that

the allegations in the Complaint do not suggest that he was innocent of the charges to

which he subsequently pleaded guilty, and that he assaulted Defendant only as an attempt

to defend himself from Defendant's unprovoked attack.  Dkt. No. 39-1 at 5-10.

In Heck v. Humphrey, the Supreme Court of the United States created a jurisdictional

prerequisite to civil suits brought under 42 U.S.C. § 1983:

> [i]n order to recover damages for harm caused by actions
> whose unlawfulness would render a conviction or sentence
> invalid, a § 1983 plaintiff must prove that the conviction or
> sentence has been reversed on direct appeal, expunged by
> executive order, declared invalid by a state tribunal authorized
> to make such determination, or called into question by a
> federal court's issuance for a writ of habeas corpus.

512 U.S. 477, 486-87 (1994).  Therefore, when an inmate seeks damages in a § 1983

action, "the district court must consider whether a judgment in favor of the plaintiff would

necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.  Id. at 487.  Where the Heck doctrine applies, a plaintiff "ha[s] no cause of action under § 1983."  Poventud v. City of New York, 750 F.3d 121, 130 (2d Cir. 2014).

"Courts in the Second Circuit have held that excessive force claims brought under § 1983 are barred by Heck when the plaintiff-prisoner has pleaded guilty to an offense that includes the element that the defendant-officer was performing a lawful duty at the time of the altercation."  Manley v. Grossman, No. 13-CV-1974, 2017 WL 4326541, at *5 (S.D.N.Y. Sept. 27, 2017) (collecting cases).

> However, the mere fact that a plaintiff has pleaded guilty to assaulting a law enforcement officer does not necessarily implicate Heck.  Courts have held that Heck does not bar § 1983 claims where a reasonable jury could conclude that the defendant used excessive force on the plaintiff during the altercation giving rise to the assault conviction.

Id.  "[D]ismissal of the excessive force claim [is] inappropriate [if] there are genuine issues of material fact concerning what transpired after appellant was handcuffed and whether the guards maliciously used force against him."  Griffin v. Crippen, 193 F.3d 89, 91 (2d Cir. 1999) ("The district court mistakenly concluded that, because appellant pled guilty to assaulting the guards and because his injuries were not severe, his claim failed as a matter of law and no reasonable jury could find in his favor.").

In support of his argument that Heck mandates dismissal because Pridgen's sworn deposition testimony is inconsistent with Pridgen's guilty plea, Defendant cites a case from the United States District Court for the Western District of New York ("Western District"),

Shapard v. Attea, 08-CV-6146, 2016 WL 5871360 (W.D.N.Y. Oct. 7, 2016).  See Dkt. No.

25-3 at 6-7, 11.  In Shapard, the plaintiff, an inmate, was involved in an altercation with

corrections officers in June 2005.  Shapard, 2016 WL 5871360, at *1.  Immediately after the

incident, the plaintiff wrote a letter to the facility superintendent claiming that he did not

assault the officers.  Id. at *2.  During his Tier III disciplinary hearing, the plaintiff asserted

that he was attacked without provocation.  Id. at *2.  In July 2007, the plaintiff pleaded guilty

to assaulting a corrections officer in violation of New York Penal Law § 120.05(7).  Shapard,

2016 WL 5871360 at *1.  In 2008, the plaintiff commenced an action in federal court

alleging that three corrections officers "viciously" assaulted him in retaliation for filing

grievances.  Id. at *2.  In the Complaint, the plaintiff did not deny that he had assaulted one

of the officers.  Id.  During his deposition however, the plaintiff denied assaulting the

officers.  Shapard, 2016 WL 5871360 at *2.  The District Court dismissed the plaintiff's

excessive force claims as barred by Heck.  Id. at *1.

After Defendant submitted his motion for summary judgment in this case, the Second

Circuit vacated the Western District's decision in Shapard and remanded the matter for

further proceedings.  See Shapard v. Attea (Shapard II), No. 16-3764, __ F. App'x __, 2017

WL 4548439 (2d Cir. Oct. 12, 2017) (summary order).  On appeal, the plaintiff's counsel

argued that "although Shapard believed that he did not assault Officer Attea, the use of

force applied by the officers would have been excessive even if he had."  Id. at *2.  The

Second Circuit held that the inmate's excessive force claims were not barred by Heck

because "their favorable adjudication would not 'necessarily imply the invalidity' of his prior

assault conviction."  Id. at *2.  The Second Circuit reasoned that, "the elements of

excessive force and second degree assault under N.Y. Penal Law § 120.05(7) are not

incompatible.  Id. (citations omitted).  The Court further noted that the plaintiff denied assaulting the officer during his deposition and disciplinary hearing, but he did not deny that he assaulted the officer in the complaint. Id. at *2.  Thus, the Second Circuit held that the plaintiff's "plausible claim of excessive force can be reconciled with his assault of Officer Attea, and is therefore not barred by Heck." Id. at *3.  Addressing the inconsistency in the plaintiff's accounts of the incident, the Court held that, "[o]n remand, the district court may take appropriate steps to prevent Shapard from disputing the assault, including limiting his testimony and instructing a jury that he assaulted Officer Attea."  Id. at *2 (citation omitted).

In a recent decision, this Court applied Shapard II to an excessive force case with facts strikingly similar to the case at hand.  In Reid v. Marzano, No. 9:15-CV-761 (MAD/CFH), 2018 WL 324243 (N.D.N.Y. Jan. 8, 2018), the plaintiff was convicted of third degree assault as a result of his conduct during an excessive force incident.  See Reid,  2018 WL 324243, at *3.  During his disciplinary hearing and deposition, the plaintiff denied assaulting the officer.  Id.  This Court denied the defendants' motion to dismiss and applied the reasoning set forth in Shapard II holding:

> . . . the elements of excessive force are not incompatible with the elements of third degree assault under N.Y. Penal Law § 120.00, and Plaintiff's complaint does not actually deny that he assaulted Officer Marzano.  See Dkt. No. 1 at 4. Therefore, the Court finds that Plaintiff's claims against Officer Marzano are not barred by Heck. However, as the Second Circuit noted in Shapard II, the Court may take steps to prevent Plaintiff from disputing his assault conviction, including "limiting his testimony and instructing a jury that he assaulted" Officer Marzano.

Reid, 2018 WL 324243, at *3 (citing Shapard II, 2017 WL 4548439, at *3).

In the case at hand, like the plaintiff in Shapard, Pridgen pleaded guilty to assault in the

10

second degree.   As discussed in Shapard II, the elements of assault in the second degree are not "incompatible" with excessive force.  Shapard II, 2017 WL 4548439, at 2. Additionally, like the plaintiffs in both Shapard and Reid, in the Complaint, Pridgen claims that he was attacked without provocation, but does not explicitly deny that he also assaulted Defendant.  See Compl.  Also like the plaintiffs in Shapard and Reid,[7] after filing the Complaint, Pridgen testified at his deposition that he did not assault Defendant.  Dkt. No. 25-3 at 15-16.  Thus, applying the reasoning set forth by the Courts held in Shapard II and Reid, Pridgen's claims are not barred by Heck because his "plausible claim of excessive force can be reconciled with his assault conviction."  Reid, 2018 WL 324243, at *3 (citing Shapard II, 2017 WL 4548439, at *3).  Here, as in Shapard and Reid, the Court is not without options to prevent Pridgen from presenting his conflicting accounts and disputing his assault conviction before a jury.

Accordingly, based upon the holdings in Shapard II and Reid, and for the reasons set forth herein, Pridgen's excessive force claim is not barred by Heck, and it is recommended that Defendant's motion for summary judgment on this ground be denied.

## C. Exhaustion

In the alternative to his Heck argument, Defendant contends that the motion for summary judgment must be granted because Pridgen failed to exhaust his administrative remedies through available grievance procedures.  See Dkt. No. 25-10 at 11-15.  The

---

[7]  "In this case, Plaintiff was also convicted of assault because of his conduct during the incident giving rise to his excessive force claim.2 Additionally, like the plaintiff in Shaphard [sic], Plaintiff told a different story during his Tier III disciplinary hearing and his deposition in this case; in both instances, Plaintiff denied assaulting Officer Marzano."  Reid, 2018 WL 324243, at *3.

Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust any administrative remedies available to him or her before bringing an action for claims arising out of his or her incarceration.  Porter v. Nussle, 534 U.S. 516, 524 (2002); see also Woodford v. Ngo, 548 U.S. 81, 82 (2006).  The exhaustion requirement applies " 'to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'"  Mauldin v. Kiff, No. 11-CV-107-A, 2014 WL 2708434, at *4 (W.D.N.Y. June 16, 2014) (quoting Porter, 534 U.S. at 532).  Further, the exhaustion requirement applies even where the prisoner seeks relief not available in the administrative grievance process, such as money damages.  Porter, 534 U.S. at 524.  To exhaust administrative remedies, the inmate must complete the full administrative review process set forth in the rules applicable to the correctional facility in which he or she is incarcerated.  Jones v. Bock, 549 U.S. 199, 218 (2007) (internal citation omitted).

Although the Supreme Court has deemed exhaustion mandatory, the Second Circuit has recognized that "certain caveats apply."  Ruggiero v. County of Orange, 467 F.3d 170, 175 (2d Cir. 2006) (citation omitted).  Until recently, courts in this district followed a three-part test established by the Second Circuit in Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004).  Under the test established in Hemphill, a plaintiff's failure to exhaust could be excused if the plaintiff established that his or her failure to exhaust was justified by "special circumstances."  Id.  However, the Supreme Court recently held that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement."  Ross v. Blake, ___U.S.___, 136 S. Ct. 1850, 1862 (2016).  As such, the special circumstances exception previously promulgated by the Second Circuit in Hemphill, is no longer consistent with the statutory requirements of the PLRA.  Williams v. Priatno,

12

829 F.3d 118, 123 (2d Cir. 2016).

Although the Supreme Court's decision in Ross eliminates the "special circumstances" exception promulgated by Hemphill, courts must still consider the PLRA's "textual exception to mandatory exhaustion." Ross, 136 S. Ct. at 1858.  Under this exception, courts must determine whether administrative remedies were "available" to a prisoner. Id.  The Supreme Court identified three circumstances where administrative remedies may be unavailable to a prisoner.  First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. at 1859 (citing Booth v. Churner, 532 U.S. 731, 736, 738 (2001)).  "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id.  Lastly, administrative remedies are unavailable where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860.

If it is found that the plaintiff has not exhausted all available administrative remedies, his or her case should be dismissed without prejudice.  Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Securities Dealers, Inc., 560 F.3d 118, 124 (2d Cir. 2009) (citation omitted).  Since "[f]ailure to exhaust administrative remedies is often a temporary, curable procedural flaw," and "[i]f the time permitted for pursuing administrative remedies has not expired, a prisoner . . . can cure the defect by exhausting [the available remedies] and reinstating his suit." Berry v. Kerik, 366 F.3d 85, 87 (2d Cir. 2003) (amended 2004) (quoting Snider v. Melindez, 199 F.3d 108, 111-12 (2d Cir. 1999)).

Here, there is no dispute that at all relevant times, DOCCS had in place a three-step

13

inmate grievance program.  See N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5 (2015).[8]

## 1. Application

The parties do not dispute that Pridgen failed to exhaust his administrative remedies.

Thus, the undersigned must assess only whether administrative remedies were available to

Pridgen.  In that regard, Pridgen sets forth two plausible arguments to establish

that administrative remedies were not available to him.  First, Pridgen alleges that he

attempted to file a grievance, but that the grievance was thrown out or otherwise destroyed

by corrections officers.  Dkt. No. 25-3 at 41-43.  Next, Pridgen alleges that he did not

attempt to file any further grievances due to fear of retaliation.  Id. at 44-49.

### a. Allegation that Grievances were Thrown Out by Correction Officers

Administrative remedies may be unavailable where "prison administrators thwart

inmates from taking advantage of a grievance process through machination,

misrepresentation, or intimidation."  Ross, 136 S. Ct. at 1860.  However, it is well-settled

that where an inmate does not receive a response to a grievance, the inmate must appeal

to the next level of review notwithstanding the lack of response at the first level of review.

---

[8] First, the inmate must file a complaint with an inmate grievance program ("IGP") clerk within twenty-one days of the alleged action. Id. at § 701.5(a)(1).  An IGP representative has sixteen calendar days to informally resolve the issue. Id. at § 701.5(b)(1).  If no informal resolution occurs, the full IGP committee must hold a hearing within sixteen days of receipt of the grievance and must issue a written decision within two working days after the conclusion of the hearing. Id. §§ 701.5(b)(2)(i)-(ii).  If the determination is unfavorable to the inmate, the inmate may appeal the IGRC's determination to the facility superintendent within seven calendar days of receipt of the determination. Id. § 701.5(c)(1).  If the superintendent's determination is unfavorable to the inmate, the inmate may appeal to the Central Office Review Committee ("CORC") within seven days after receipt of the superintendent's determination. Id. §§ 701.5(d)(i)-(ii).  CORC must "review each appeal, render a decision on the grievance, and transmit its decision to the facility, with reasons stated, for the [inmate], the grievance clerk, the superintendent, and any direct parties within thirty (30) calendar days from the time the appeal was received." Id. § 701.5(d)(3)(ii).

See Khudan v. Lee, No. 12-CV-8147, 2015 WL 5544316, at *5 (S.D.N.Y. Sept. 17, 2015) (dismissing the plaintiff's complaint where the plaintiff failed to appeal to the next level of review after failing to receive a response on his filed grievance).  Thus, even if an inmate suspects that his grievances were discarded, he or she must still appeal the grievance despite the lack of response at the first step of review.  Chiarappa v. Meyers, No. 09-CV-607, 2013 WL 6328478, at *5 ( W.D.N.Y. Dec. 5, 2013) ("[E]ven if plaintiff attempted unsuccessfully to file a grievance in a timely manner, the lack of a response does not relieve him of the requirement to timely appeal the grievance through all three steps of the grievance process."); Belile v. Griffin, No. 9:11-CV-0092 (TJM/DEP), 2013 WL 1776086, at *8 (N.D.N.Y. Feb. 12, 2013), report and recommendation adopted by, 2013 WL 1291720 (N.D.N.Y. Mar. 27, 2013) ("Plaintiff's mere threadbare allegations that his grievances were intercepted and discarded, without evidence to support such allegation, including any evidence that identifies which defendant, in particular, is responsible for discarding the grievances, are insufficient to excuse his failure to comply with the [Inmate Grievance Program]").

Here, Pridgen alleges, with no supporting evidence, that he attempted to file a grievance regarding the incidents alleged in the Complaint, but that the grievance was thrown out by correction officers.  Dkt. No. 25-3 at 41-43.  Pridgen's only support for this accusation is his own testimony.  Even assuming, as the Court must, that Pridgen's allegations are true, he has still failed to demonstrate that administrative remedies were unavailable to him because, after his grievance was destroyed, he failed to appeal his grievance to the next level of review.  See Arce v. Keane, No. 01 Civ. 2648, 2004 WL 439428, at *2 (S.D.N.Y. Mar. 9, 2004) ("An inmate's failure to appeal a grievance is not

15

excused because he has received no response to his initial grievance").  Thus, Pridgen's accusation that correction officers discarded his grievance, alone, does not excuse his failure to exhaust his administrative remedies.

### b.  Fear of Retaliation

Pridgen urges the Court to excuse his failure to exhaust because he declined to file a grievance due to his fear of retaliation.  Dkt. No. 25-3 at 44-49.  Specific threats of retaliation or intimidation by prison employees can render administrative remedies unavailable.  Ross, 136 S. Ct. at 1860, n.3.  However, a generalized fear of retaliation is insufficient to overcome a failure to exhaust administrative remedies.  Salmon v. Bellinger, No. 9:14-CV-0827 (LEK/DJS), 2016 WL 4411338, at *5 (N.D.N.Y. July 5, 2016).  Estoppel is found where "verbal and physical threats of retaliation, physical assault, denial of grievance forms or writing implements, and transfers" occur showing that defendants acted affirmatively to prevent an inmate from availing him or herself of the grievance procedures. Id. at *5 (quoting Amador v. Andrews, 655 F.3d 89, 103 (2d Cir. 2011)).

Pridgen argues in his response in opposition that he had a "specific fear against defendant Beatie and fellow correction officers which left plaintiff with the understanding of the following equation: grievance = a punch in the eye."  See Dkt. No. 39-1 at 12.  Pridgen's contention that the grievance procedures were unavailable to him due to his fear of retaliation is belied by his conduct after the incident.  Specifically, Pridgen testified that Beatie punched him after he asked for a grievance related to the issue involving the dishes. See Dkt. No. 39-1 at 11.  Pridgen also testified that on the way to the SHU, officers told him not to report any of his injuries.  Dkt. No. 25-3 at 9.  However, despite Beatie's behavior and

16

the subsequent warning, once Pridgen arrived in the SHU, he "received" and completed a

"grievance paper" and gave the grievance to officers. Id. at 10. Pridgen does not state how

any specific threat from Beatie or any other officer impacted his ability to exhaust

administrative remedies related to the events that occurred on June 15, 2014. See Aviles v.

Tucker, No. 14-CV-8636, 2016 WL 4619120, at *4 (S.D.N.Y. Sept. 1, 2016) (finding

grievance procedures were available where the plaintiff offers conclusory allegations of fear

and does not substantiate what specific fears or past acts preclude him from advancing in

grievance procedures); Harrison v. Stallone, No. 9:06-CV-902 (LEK/GJD), 2007 WL

2789473, at *5 (N.D.N.Y. Sept. 24, 2007) ("It has been held that a 'general fear' of

retaliation is not sufficient to excuse the exhaustion requirement . . . If an inmate could

simply state that he feared retaliation, there would no point in having a grievance

procedure.") (citations omitted).

    Upon review of the record, the undersigned finds that much of Pridgen's alleged fear is

generalized. Indeed, Pridgen offers no evidence establishing that he was threatened by

any officers after the June 15, 2014 incident. For example, Pridgen testified that "inmates"

at Watertown C.F. told him "generally" that he would suffer retaliation if he filed grievances.

Dkt. No. 25-3 at 44-45. While confined at Upstate C.F., Pridgen was not threatened by any

officers. Dkt. No. 25-3 at 47. By his own admission, Pridgen denies any actual threats or

physical force being used against him which prevented him from taking part in the

grievance program. See Salmon, 2016 WL 4411338, at *5 (stating there must be

affirmative actions or specific instances of physical assault or threats of retaliation for

plaintiff to show unavailability of the grievance process). Insofar as Pridgen suggests that

he feared physical retaliation if he were to file a grievance, such a claim is further countered

by the fact that the Complaint fails to mention any fear of retaliation.

In conclusion, the undersigned finds that Defendant has met his burden of showing that there is no genuine issue of material fact as to Pridgen's failure to exhaust administrative remedies, and that administrative remedies were available to him. Accordingly, the Court recommends that Defendant's motion be granted on this ground, but that such dismissal be without prejudice. See Morales v. Mackalm, 278 F.3d 126, 131 (2d Cir. 2002) (per curiam) (dismissal of a prisoner's complaint for failure to exhaust administrative remedies should be without prejudice).

### IV.  Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendant's motion for summary judgment (Dkt. No. 25) be **GRANTED**; and it is further

**RECOMMENDED**, that the Complaint (Dkt. No. 1) be **DISMISSED** in its entirety, without prejudice; and it is

**ORDERED**, that copies of this Report-Recommendation and Order be served on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court**. FAILURE TO OBJECT TO THIS REPORT WITHIN *FOURTEEN (14)* DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993)

(citing <u>Small v. Secretary of Health and Human Services</u>, 892 F.2d 15 (2d Cir. 1989)); 28

U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: January 17, 2018
       Albany, New York

                               Christian F. Hummel
                               U.S. Magistrate Judge